UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JANET MARIE ELTZROTH,

      **Plaintiff,**

    v.                         Civil Action 2:20-cv-6558
                                   Chief Judge Algenon L. Marbley
COMMISSIONER OF SOCIAL       Magistrate Judge Chelsey M. Vascura
SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

    Plaintiff, Janet Marie Eltzroth ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability, Disability Insurance Benefits, and Supplemental Security Income benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                               **I.    BACKGROUND**

    Plaintiff filed an application for Title II Period of Disability and Disability Income Benefits on June 5, 2018, and an application for Title XVI Supplemental Security Income Benefits on June 26, 2018, alleging that she had been disabled since November 30, 2017. (R. 206–10.) On January 22, 2020, following administrative denials of Plaintiff's application

Case: 2:20-cv-06558-ALM-CMV Doc #: 20 Filed: 12/14/21 Page: 2 of 17 PAGEID #: 1135

initially and on reconsideration, Administrative Law Judge Deborah F. Sanders (the "ALJ") held a hearing, at which Plaintiff, represented by counsel, appeared and testified. (R. 38–99.) A vocational expert ("VE") also appeared and testified at the hearing. (*Id.*) On April 1, 2020, the ALJ issued a decision denying benefits. (R. 15–31.) On October 27, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff sets forth two contentions of error: (1) the ALJ's residual functional capacity is not supported by substantial evidence (specifically relating to Plaintiff's migraines, upper right extremity, and concentration, persistence, and pace), and (2) the ALJ failed to properly evaluate Plaintiff's fibromyalgia under Social Security Ruling 12-2p. (Pl.'s Statement of Errors 6–16, ECF No. 17.)

## II.     THE ALJ'S DECISION

The ALJ issued her decision on April 1, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–31.) At step one of the sequential

2

evaluation process,[1] the ALJ found that Plaintiff had engaged in periods of substantial gainful activity since November 30, 2017, the alleged onset date of disability. (*Id.*) However, the ALJ also found that there has been one or more continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity. (*Id.*) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the sacroiliac joints; degenerative disc disease of the cervical, thoracic, and lumbar spine; pubic symphysis degenerative changes; gluteus minimus tendinitis; fibromyalgia; osteoarthritis of the right hand and wrist; rheumatoid arthritis without rheumatoid factor; functional movement disorder; headaches; polyneuropathy; asthma; obesity; anxiety; dysthymic disorder; and adjustment disorder with depressed mood. (*Id.*) At step three, the ALJ found that Plaintiff did not have an

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (R. 19–21.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to standing and/or walking no more than four hours in an eight hour day and sitting no more than four hours in an eight-hour day. She could occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds. She would be able to frequently balance and occasionally stoop, kneel, crouch, and crawl. She would avoid concentrated exposure to extreme cold, extreme heat, and irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. The claimant would never work at unprotected heights or around dangerous machinery, and she would never operate a motor vehicle. She would be able to frequently handle and finger with the dominant right upper extremity. The claimant would be able to perform tasks without fast production rate pace and no strict production quotas, such as assembly line work. She would be able to adapt to a relatively static work environment with infrequent changes in the work setting.

(R. 21.) At step four, relying on testimony from the VE, the ALJ found that Plaintiff was capable of performing her past relevant work as an Administrative Assistant/Office Clerk or Telemarketer. (R. 29.) At step five, the ALJ also determined that other jobs exist in significant numbers in the national economy that Plaintiff can perform such as Office Helper/Clerical Assistant, Mailroom Clerk, Storage Facility Rental Clerk, Surveillance System Monitor, Addresser and Address Clerk, and Document Preparer. (R. 30–31.) The ALJ therefore concluded that Plaintiff has not been under a disability since November 30, 2017. (R. 31.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

4

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.  ANALYSIS

As set forth above, Plaintiff raises two issues in her Statement of Errors: (1) the ALJ's RFC is not supported by substantial evidence, due to the ALJ's failure to appropriately consider Plaintiff's migraines, upper extremity limitations, and limitations in concentration, persistence,

and pace; and (2) the ALJ erred in her analysis of Plaintiff's fibromyalgia pursuant to SSR 12-2p. (ECF No. 17.) The undersigned considers each contention of error in turn.

**A.      The ALJ's RFC is supported by substantial evidence.**

**1.      Standards Governing RFC Assessment**

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

### 2. The ALJ did not err in considering Plaintiff's migraines.

Plaintiff contends that the ALJ erred by not including limitations related to her migraine headaches in the hypothetical question to the VE. (Pl.'s Statement of Errors 7–8, ECF No. 17.) Plaintiff argues that the ALJ "erred by not making a specific finding concerning the frequency and duration of [Plaintiff's] headaches as part of the residual functional capacity and this error is not harmless" because "the vocational expert advised that more than 10–12% off-task behavior and more than half of a day to a day of absence per month would not be tolerated by most employers." (*Id.* at 8, citing VE's testimony at R. 95–97.)

In her decision denying benefits, the ALJ noted that Plaintiff "had developed chronic migraines, that were managed with Trileptal medication." (R. 24.) The ALJ also included "headaches" among Plaintiff's severe impairments. (*Id.* at 18.) The ALJ did not otherwise discuss Plaintiff's migraines or include any limitations relating to migraines in the RFC. Yet Plaintiff has not identified any evidence which would warrant migraine-related limitations. Although Plaintiff cites her own self-reports and medical records documenting a diagnosis of migraines (*e.g.*, R. 76, 768), "[t]he mere diagnosis . . ., of course, says nothing about the severity of the condition." *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). Moreover, "an ALJ is not required to accept a claimant's subjective complaints." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And Plaintiff has not identified any evidence that her migraines, separate and apart from the other impairments recognized by the ALJ, limits her functioning in any way, let alone that her migraines would result in her being off-task for more than 10–12% of the time or missing more than a day of work each month. Accordingly, the undersigned finds no error by the ALJ in not including further limitations in the RFC as a result of Plaintiff's migraine headaches.

3. **The ALJ did not err in considering Plaintiff's upper extremity limitations.**

Plaintiff asserts that the ALJ erred in limiting her to frequent—as opposed to occasional—handling and fingering with the dominant right upper extremity. (Pl.s' Statement of Errors 8–9, ECF No. 17.) This error is not harmless, Plaintiff contends, because the VE testified that restriction to occasional handling and fingering, in combination with the other restrictions assessed by the ALJ, would preclude light and sedentary unskilled work. (*Id.*, citing VE's testimony at R. 96–97.) Plaintiff further contends that the frequent limitation "is not based on any medical opinion in the record and, as a result, is merely a presumption based on the ALJ's own lay opinion of the medical evidence." (*Id.* at 9.)

The undersigned disagrees. Among other physical and postural limitations, state agency medical reviewer Dr. Steve McKee, M.D., on reconsideration of the record, opined that Plaintiff was limited to "frequent handling/fingering with right hand." (R. 131.) The ALJ found Dr. McKee's limitations as to Plaintiff's "sitting, standing, and walking, as well as her postural limitations" to be unpersuasive because "the evidence shows [Plaintiff] to be more limited," and therefore "reduced" Plaintiff's RFC exertional and postural limitations, (R. 27), but declined to similarly reject Dr. McKee's opined manipulative limitations, ultimately incorporating these limitations into Plaintiff's RFC. The opinion of state agency reviewer Dr. McKee constitutes substantial evidence on which the ALJ may rely to craft the RFC. *See Hefflin o.b.o. LDS v. Kijakazi*, No. 1:20-cv-1414, 2021 WL 4477785, at *6 (N.D. Ohio Sept. 30, 2021) (collecting cases for the proposition that "State Agency opinions may constitute substantial evidence supporting an ALJ's decision"); *see also* 20 C.F.R. § 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants). Moreover, the ALJ thoroughly discussed the record evidence regarding Plaintiff's upper right extremity, including Plaintiff's subjective complaints of stiffness, swelling, and decreased range of motion in her hands due to arthritis,

8

right-hand tenderness and weakness, as well as Plaintiff's treatment records, examination findings, and objective testing results, and ultimately concluded that this record evidence supports her RFC determination regarding Plaintiff's manipulative limitations. (*See* R. 22-24 (discussing Plaintiff's self-reports, treatment history, examination results, and objective testing evidence relating to Plaintiff's right extremity); and R. 25 (concluding that Plaintiff "would be able to frequently handle and finger with the dominant right upper extremity," explaining that "[t]his [limitation] is supported by the above records as well as the claimant's testimony and self-report").)

And although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Accordingly, the ALJ's handling and fingering limitations were supported by substantial evidence.

### 4. The ALJ did not err in considering Plaintiff's limitations in concentration, persistence, or pace.

Plaintiff contends that the ALJ did not sufficiently account for all of the opined limitations by consultative examiner Marc E.W. Miller, Ph.D., whose opinion the ALJ found to be persuasive. (Pl.'s Statement of Errors 10–11, ECF No. 17.) Dr. Miller stated that Plaintiff's "abilities and limitations in regard to understanding, remembering, and carrying out one and two step job instructions appear to be adequate at this time"; that her "abilities and limitations in regard to maintaining attention span and concentration indicate some difficulty"; and that "her abilities and limitations in regard to dealing with stress and pressure in a work setting indicate difficulty." (R. 727.) Plaintiff asserts that "[t]he consultative examiner clearly opined that Ms.

9

Eltzroth would have difficulty maintaining attention and concentration and difficulty responding appropriately to changes in the work setting; however, the ALJ failed to include these limitations in her residual functional capacity determination." (Pl.'s Statement of Errors 10, ECF No. 17.)

The ALJ acknowledged Plaintiff's complaints of poor concentration, but also noted that the record reflected multiple normal mental status examinations. (R. 25–26, citing R. 687-88, 763–806, 807–08, 860.) The ALJ further found Dr. Miller's opinions regarding Plaintiff's difficulties with attention, concentration, and dealing with stress and pressure to be "persuasive." (*Id.* at 28.) Accordingly, the ALJ's RFC includes limitations that Plaintiff "would be able to perform tasks without fast production rate pace and no strict production quotas, such as assembly line work. She would be able to adapt to a relatively static work environment with infrequent changes in the work setting." (R. 21.)

Plaintiff fails to explain how Dr. Miller's assessment of "difficulty" with attention, concentration, stress, and pressure are not sufficiently accounted for by the mental limitations the ALJ assessed. These limitations acknowledge that Plaintiff has deficits in attention, concentration, and dealing with work pressures and stress; the nonspecific "difficulty" identified by Dr. Miller that Plaintiff has in these areas demands nothing more. *See Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D. Tenn. Mar. 28, 2017) (an assessment of "difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC"). And although Plaintiff argues that the ALJ "failed to acknowledge that [Plaintiff] may be unable to stay alert, stay focused or work at a consistent pace, even at a simple, unskilled, routine job" (Pl.'s Statement of Errors 11, ECF No. 17), Dr. Miller did not so opine. The undersigned therefore finds the ALJ's limitations related to concentration, persistence, and pace to be supported by substantial evidence.

B.     **The ALJ did not err in considering Plaintiff's fibromyalgia.**

Plaintiff contends that the ALJ erred in her consideration of Plaintiff's fibromyalgia pursuant to Social Security Ruling 12-2p, resulting in her failure to incorporate limitations related to Plaintiff's fibromyalgia into the RFC.  (Pl.'s Statement of Errors 13, ECF No. 17.)  Plaintiff also argues that the ALJ erred in finding Plaintiff's fibromyalgia did not medically equal a listing in 20 CFR Part 404, Subpart P, Appendix 1.  The undersigned disagrees on both points.

1.     **The ALJ did not err in declining to assess additional limitations due to Plaintiff's fibromyalgia.**

Plaintiff offers the following argument in support of her challenge to the ALJ's consideration of her fibromyalgia:

> [T]he record is replete with evidence that satisfies the requirements of SSR 12-2p. Although, the ALJ determined that Ms. Eltzroth's fibromyalgia was a severe impairment, she failed to include accommodations in the residual functional capacity determination for Ms. Eltzroth's chronic pain and to consider her resulting inability to perform substantial gainful activity on a sustained basis, without additional absences and time off task.

(Pl.'s Statement of Errors 13, ECF No. 17.)

Plaintiff's reliance on SSR 12-2p is misplaced.  SSR 12-2p deals primarily with the ALJ's determination of whether fibromyalgia constitutes a "medically determinable impairment" at step two of the sequential evaluation process.  Because the ALJ found Plaintiff's fibromyalgia to be a medically determinable impairment, SSR 12-2p requires only that the ALJ consider Plaintiff's fibromyalgia in the remaining steps of the sequential evaluation process.  As the Sixth Circuit has explained:

> On July 25, 2012, the SSA released SSR 12-2p . . . , which "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims. . . ."  [SSR 12-2p, at *1.]  To that end, SSR 12-2p describes criteria for establishing that a person has a medically determinable impairment [ ] of fibromyalgia, *id.* at *2–3, the sources of evidence the ALJ may look to, *id*. at *3–4, and how a claimant's subjective assertions of pain and functional limitations are

> evaluated, *id*. at *4. [SSR 12-2p] also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id*. at *5–6. Importantly, . . . SSR 12-2p . . . merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016). The Sixth Circuit has further acknowledged that fibromyalgia is "elusive" in that "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243 (quoting *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003)). "Nonetheless, a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)). Accordingly, in cases involving fibromyalgia, an ALJ must "decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain*, 297 F. Supp. 2d at 990.

Here, the ALJ determined at step two of the sequential evaluation process that Plaintiff's fibromyalgia constituted a severe impairment. (R. 18.) In explaining how she arrived at Plaintiff's RFC, the ALJ acknowledged Plaintiff's history of fibromyalgia, noting that Plaintiff "reported difficulty with . . . fibromyalgia, noting that it hurts to stand and walk"; that "[t]reatment notes indicate that the claimant suffered from a number of arthritic conditions and fibromyalgia, with physical examinations showing myofascial tenderness, painful range of motion, and intermittent joint pain"; that Plaintiff "complained of fibro fog" at an August 2018 examination; that "it was again noted that [Plaintiff] had a diagnosis of fibromyalgia" and "reported pain all over" at an October 2018 examination; and that Plaintiff "presents with

12

positive findings of . . . fibromyalgia"; (R. 22–25, 28).  However, the ALJ also noted that Plaintiff had a number of exams that were essentially normal as to her pain and range of motion. (R. 23–24.)  The ALJ concluded that some physical RFC limitations were warranted:

> While the totality of the medical evidence does not entirely support the claimant's allegations [of severe physical impairments], the undersigned finds that these impairments do warrant some limitations.  Specifically, the undersigned finds that the claimant can perform light work except the claimant would be limited to standing and/or walking no more than four hours in an eight hour day and sitting no more than four hours in an eight-hour day. She could occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds. She would be able to frequently balance and occasionally stoop, kneel, crouch, and crawl.  . . .  This is supported by the above records as well as the claimant's testimony and self-report.

(R. 24–25.)  Plaintiff does not explain how the RFC's limitations are inadequate or propose specific additional limitations that result from her fibromyalgia.  The undersigned therefore finds no error in the ALJ's consideration of Plaintiff's fibromyalgia.  *Cf. Luukkonen*, 653 F. App'x at 399 (dismissing plaintiff's argument that the ALJ failed to properly apply SSR 12-2p because any resulting error would have been harmless where the ALJ considered plaintiff's fibromyalgia a severe impairment at step two).

### 2. The ALJ did not err in finding Plaintiff's fibromyalgia did not medically equal a listing.

Further, the undersigned finds no error in the ALJ's conclusion that Plaintiff's fibromyalgia does not medically equal a listing in the Listing of Impairments in 20 CFR Part 404, Subpart P, Appendix 1.   The ALJ indicated that she considered "all listings, including those in section 1.00, 3.00, 11.00, 12.00, and 14.00 of Appendix 1 and SSRs 12-2p and 19-2p" in determining that Plaintiff's impairments do not meet or medically equal a listing.  (R. 19.) However, Plaintiff contends this brief boilerplate sentence was insufficient to address whether her fibromyalgia medically equals a listing.

13

The relevant Social Security regulations require the ALJ to find a claimant disabled if he meets or medically equals a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). But neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641 (6th Cir. 2013). The ALJ should discuss the relevant listing, however, where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing. *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990); *see also Sheeks*, 544 F. App'x at 641. The Sixth Circuit has held that "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432–33 (6th Cir. 2014) (citing *Sheeks,* 544 F. App'x at 641–42 (finding claimant did not raise a substantial question as to satisfying the listing for intellectual disability where the ALJ's finding of borderline intellectual functioning simply left open the question of whether he meets a listing and where claimant pointed to only a few pieces of tenuous evidence addressing the listing)). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan,* 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify.") and *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 416 (6th Cir. 2011) (holding that it was not harmless error for the ALJ to fail to analyze Step Three as to an impairment found to be severe at Step Two where the claimant put forth evidence that could meet the relevant listing)). Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three. *Smith-Johnson*, 579 F. App'x at 433.

Plaintiff must therefore direct the Court to evidence in the record that raises "a substantial question" as to whether her fibromyalgia meets or equals a particular listing. As noted by Plaintiff, although there is no listing for fibromyalgia, SSR 12-2p uses Listing 14.09D (inflammatory arthritis) as an example listing that might be relevant for claimants with fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *6. However, Plaintiff does not assert that her fibromyalgia medically equals Listing 14.09D; nor does she identify any other listing that her fibromyalgia allegedly equals. She states only that her symptoms of "chronic fatigue; co-occurring conditions of depression and anxiety; headaches/migraines throughout her medical record; tender points throughout her body; abdominal pain, nausea, constipation, gastroenteritis; symptoms of memory loss and lack of concentration; numbness, tingling, stiffness; poor motivation and energy level; SICCA symptoms; and rash" required further listing-related discussion by the ALJ. (Pl.'s Statement of Errors 15, ECF No. 17.)

Even if Plaintiff's fibromyalgia is evaluated in relation to Listing 14.09D, this listing requires:

> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D. Although Plaintiff cites evidence of chronic fatigue, she has identified no evidence of fever, malaise, or involuntary weight loss. Nor has she directed the Court to evidence of marked limitations in activities of daily living, maintaining social functioning, or completing tasks in a timely manner. Accordingly, Plaintiff has not raised

15

a substantial question as to whether her impairments meet or medically equal the criteria of Listing 14.09D, or any other Listing.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE